**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

---

**HAROLD JOSEPHS**, **Ph.D., P.E.,**
an individual,

        *Plaintiff,*

vs.

**FEDERAL-MOGUL CORPORATION,**
a Delaware corporation,

        *Defendant.*

**HONORABLE** _____

**CIVIL ACTION NO.** _____

---

MARK A. CANTOR        (P32661)
ROBERT C.J. TUTTLE    (P25222)
JOHN E. NEMAZI       (P33285)
**BROOKS KUSHMAN P.C.**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
Tel:    (248) 358-4400
Fax:   (248) 358-3351

    *Attorneys for Plaintiff*

---

# COMPLAINT FOR FALSE PATENT MARKING



# I.  THE PARTIES

1.       Plaintiff, Harold Josephs, Ph.D., P.E., is a licensed professional engineer residing in this judicial district.

2.       Defendant, Federal-Mogul Corporation (hereafter "Federal Mogul"), is a Delaware corporation, having a principal place of business at 26555 Northwestern Highway, Southfield, Michigan 48033.

3.       Federal Mogul has appointed Robert L. Katz, Senior Vice President, General Counsel and Secretary, as its agent for service of process, at the same address as its principal place of business.



## II. <u>JURISDICTION</u>

4.      The federal claim pleaded herein arises under 35 U.S.C. §292(b).

5.      Subject matter jurisdiction for this federal claim is conferred upon the Court

by 28 U.S.C. § 1338(a).



### III.  BACKGROUND FACTS

**A.      The Purpose of this Action**

6.       The purpose of this lawsuit is to act in the public interest to enforce the policy underlying the false marking statute,  35 U.S.C. §292.

**B.      The Policy of the Patent Marking Statutes**

7.       The patent marking statute (35 U.S.C. §287(a)) and the false patent marking statute (35 U.S.C. §292) exist to insure that the public has accurate information on the existence of patent rights in articles.

8.       The several purposes of the patent marking statute were explained by the Federal Circuit in *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998), as: (1) helping to avoid innocent infringement, (2) encouraging patentees to give notice to the public that the article is patented, and (3) aiding the public to identify whether an article is patented.

9.       In the event a patentee (or its licensee) fails to comply with the marking requirement of 35 U.S.C. §287(a), the sanction is that "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."

10.       When the Patent Act of 1952 was enacted, false patent marking was punishable as a criminal offense under Title 18 of the United States Code.



11.     The Patent Act of 1952 retained a *qui tam* cause of action on behalf of the public to fine the offender in an amount of up to $500 for each offense, with half going to the use of the United States, and the other half going to the person bringing the action.

12.     P. J. Federico, one of the principal drafters of the Patent Act of 1952, wrote a "Commentary on the New Patent Act," explaining a *qui tam* action under 35 U.S.C. §292:

> Section 292 is divided into two subsections, subsection (a) is written in the same form as the sections of the criminal code (Title 18, U.S.C.A.) establishing criminal offenses and the offense of false marking is now an ordinary criminal offense which can be prosecuted in the same manner as others.  However, subsection (b) of section 292 retains the informer (*qui tam*) action as additional, presumably alternative, to the criminal action.

13.     False marking of unpatented articles as "patented" is injurious to the public interest, as explained by the United States Court of Appeals, in at least the following ways:

• Acts of false marking deter innovation and stifle competition in the marketplace.

• False marks may deter scientific research when an inventor sees a mark and decides to forgo continued research to avoid possible infringement.

• False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

14.     Additionally, a consumer seeing an article marked as "patented" is likely to infer the article possesses design or utilitarian features that are unique to such article, and not available in substitute articles from other producers, thus inducing consumer demand for the marked article.



C.      **Federal Patent Policy**

15.      The Supreme Court stated in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*, 324 U.S. 806, 816 (1945), that patents by their very nature are affected with a public interest:

> The possession and assertion of patent rights are 'issues of great moment to the public.' [Citations omitted.] A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market.

16.      The United States Patent and Trademark Office agrees: "A patent by its very nature is affected with a public interest." 37 C.F.R. §1.56(a).

17.      Due to the public's interest in the patent system, Congress has empowered "any person" to file a false marking action in Federal Court under 35 U.S.C. §292, or request reexamination of any claim of an enforceable patent (35 U.S.C. §302 (*ex parte*) and 35 U.S.C. §311 (*inter parte*s)), whether or not the person acting is involved in a substantial controversy with the patentee, or  has adverse legal interests to the patentee, or has sustained an injury-in-fact.

18.      The Supreme Court has stated:

(A)      *"An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so. Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964);  *Compco Corp. v. Day-Brite Lighting*, 376 U.S. 234 (1964),



(B)    "... federal law requires that all ideas in general circulation be dedicated to the

common good unless they are protected by a valid patent." *Lear, Inc. v. Adkins*, 395

U.S. 653, 668 (1969), and

(C)    "In general, unless an intellectual property right such as a patent or copyright

protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Marketing

Displays, Inc.*, 532 U.S. 23, 29 (2001).

19.    False patent marking is an impediment to these basic federal policies.

## D.    Federal Mogul - A Patent-Sophisticated Company

20.    Federal Mogul describes itself in its Form 10-K, filed with the Securities and

Exchange Commission, as follows:

Federal-Mogul Corporation (the "Company") is a leading global supplier of technology and innovation in vehicle and industrial products for fuel economy, alternative energies, environment and safety systems. The Company serves the world's foremost original equipment manufacturers ("OEM") of automotive, light commercial, heavy-duty, industrial, agricultural, aerospace, marine, rail, and off-road vehicles, as well as the worldwide aftermarket. Federal-Mogul's leading technology and innovation, lean manufacturing expertise, as well as marketing and distribution deliver world-class products, brands and services with quality excellence at a competitive cost.

21.    Federal Mogul further describes its worldwide patent portfolio as "materially

important to its business because it enables Federal Mogul to achieve technological differentiation

from its competitors":

**The Company's Intellectual Property**

The Company holds in excess of 4,600 patents and patent applications on a worldwide basis, of which 900 have been filed in the United States. Of the approximately 4,600 patents and patent applications, approximately 30% are in



production use and/or are licensed to third parties, and the remaining 70% are being considered for future production use or provide a strategic technological benefit to the Company.

The Company does not materially rely on any single patent, nor will the expiration of any single patent materially affect the Company's business. The Company's current patents expire over various periods into the year 2033. The Company is actively introducing and patenting new technology to replace formerly patented technology before the expiration of the existing patents. In the aggregate, the Company's worldwide patent portfolio is materially important to its business because it enables the Company to achieve technological differentiation from its competitors.

22.    Federal Mogul has asserted its patent rights in infringement actions.  As recently as December 23, 2008,  Federal Mogul brought a suit for patent infringement in this judicial district styled: *Federal-Mogul Worldwide, Inc., et al v. Pylon Mfg. Corp., et al*, Case No. 2:08-CV-15261-LPZ-SDP, asserting as infringed U.S. Patent No. 5,885, 023, for "Windshield Wiper Blade Connector."

23.    Federal Mogul employs Maryann Pierce Perttunen as its corporate patent counsel.  Ms. Perttunen is an experienced patent practitioner, having been admitted to the patent bar on September 12, 2000.

24.    As recently as December 17, 2009, Federal Mogul issued a press release titled: "Federal-Mogul Receives Patent for Wagner EDGE Laser-Shaped Friction, Patented friction now featured in Wagner ThermoQuiet brake pads."   The press release was posted on the site: www.aftermarketnews.com.

E.    **Federal Mogul's False Marking**

25.    Federal Mogul makes and sells a variety of products which it marks with patent numbers where at least one claim of the marked patent does not cover the marked product.



An example of falsely marked products are Federal Mogul's"ANCO" brand of automotive wiper

blades, sold in several models:

- Contour wiper blades
- AeroVantage wiper blades
- 31-Series wiper blades
- Winter blades
- Clear-Flex blades
- Ten-Edge blades
- Winter heavy-duty blades

      26.     An exemplary falsely marked product is the ANCO Winter blades, which are

currently sold in packaging marked as shown below:







27.    A second exemplar is the ANCO regular blades, which are currently sold in packaging marked as shown below:



28.    A third exemplar is he ANCO Contour blades, which are currently sold in packaging marked as shown below:





29.     In 2009, Federal Mogul issued a revised package for some of its ANCO

Winter blades, marked as shown below:





30.     These instances of false marking are representative, and not exhaustive.

**F.     Federal Mogul's Intent**

31.     Federal Mogul did not have, and could not have had, a reasonable belief that

its ANCO wiper products were properly marked.



**U.S. Patent D327,013**

32.    U.S. Patent D327,013 is a design patent titled "Packaging Container," which issued June 16, 1992, and expired on June 16, 2006.

33.    U.S. Patent D327,013 does not cover any of the ANCO wiper products on which it is marked.

34.    Federal Mogul removed U.S. Patent D327,013 from its 2009 version of the ANCO Winter blade packaging, but continues to make and sell products with the 2004 version of such packaging marked with notice of U.S. Patent D327,013 with knowledge that such patent does not cover the product (or packaging) on which it is marked.

**U.S. Patent D395,865**

35.    U.S. Patent D395,865 is a design patent titled "Windshield Wiper Blade Straight Arm Connection," which issued July 7, 1998.

36.    U.S. Patent D395,865 contains a single claim directed to the "ornamental design for a windshield wiper blade straight arm connector," *i.e.*, essentially a "J"-shaped connector hook for the wiper arm.

37.    Federal Mogul's has marked ANCO wipers with U.S. Patent D395,865, with knowledge that the claim does not cover the products on which this patent is marked.

**U.S. Patent D418,474**

38.    U.S. Patent D418,474 is a design patent titled "Windshield Wiper Blade Connector," which issued January 4, 2000.



39.     U.S. Patent D418,474 contains a single claim directed to the "ornamental design for a windshield wiper blade connector," *i.e.*, essentially an adapter piece for facilitating the connection of a "J"-shaped connector hook on the wiper arm.

40.     Federal Mogul has marked ANCO wipers with U.S. Patent D418,474, with knowledge that this claim does not cover the products on which this patent is marked.

## U.S. Patent D378,365

41.     U.S. Patent D378,365 is a design patent titled "Windshield Wiper Unit," which issued March 11, 1997.

42.     U.S. Patent D378,365 contains a single claim directed to the "ornamental design for a windshield wiper unit," *i.e.*, essentially the construction of a particular embodiment of a wiper blade.

43.     Federal Mogul has marked ANCO wipers with U.S. Patent D378,365, with knowledge that this claim does not cover the products on which this patent is marked.

## U.S. Patent D395,864

44.     U.S. Patent D395,864 is a design patent titled "Windshield Wiper Large Hook Connector Shim," which issued July 7, 1998.

45.     U.S. Patent D395,864 contains a single claim directed to the "ornamental design for a windshield wiper blade large hook connector shim," *i.e.*, essentially an adapter shim for connecting the wiper blade to the wiper arm.



46.     Federal Mogul has marked ANCO wipers with U.S. Patent D395,864, with

knowledge that this claim does not cover all of the products on which this patent is marked.

**U.S. Patent 6,168,020**

47.     U.S. Patent 6,168,020 is a utility patent titled "Reclosable Sleeve Package,"

which issued January 2, 2001.

48.     U.S. Patent 6,168,020 contains the following two independent claims,

claims 1 and 10, both directed to a reclosable package:

*1. A reclosable package, comprising:*

*a container having a three dimensional configuration, a tab at a first end thereof, a space for containing a product at a second end thereof, an opening in communication with the space to allow the product to be placed in and removed from the space in the container;*

*a sleeve having an opening at a first end thereof that fits over the first end of the container to cover the opening in the container when the sleeve is in place on the container, and an enclosure at a second end thereof that covers the first end of the container and a portion of the tab;*

*the tab of the container having an aperture to enable the package to be hung on a hook;*

*the enclosure of the sleeve having a slot exposing the aperture in the tab and a portion of the tab when the sleeve is in place on the container; and*

*the slot extending to an edge of the enclosure so that when the package is hung on a hook while the sleeve is in place on the container, the package is supported only by engagement of the hook with the aperture in the tab, and is not supported by the sleeve,*

*wherein the enclosure covers a portion of the tab located along a line that extends through the aperture, the line being substantially horizontal when the package is hung from the hook.*



*10. A reclosable package, comprising:*

*a hollow container having a front, a back, a top, a bottom, and two sides, said hollow container constructed and arranged to contain a product;*

*a backing section constructed and arranged to cover a portion of said back leaving a removal area in proximity to said top of said hollow container;*

*a sleeve, constructed and arranged to slide over said top of said hollow container, said sleeve covering said removal area in said hollow container in a sliding relationship, whereby said reclosable package is undamaged when said product is removed from or returned to said hollow container through said removal area; and*

*a tab extending from said top of said hollow container, said tab including an aperture for hanging said package;*

*said sleeve having a pocket at one end thereof for receiving said tab and for covering a portion of said tab, said pocket having a slot therein to expose said tab aperture and a portion of said tab when the sleeve is in place on the hollow container, said slot extending to an edge of the pocket so that the sleeve does not support the package when the package is hung,*

*wherein the pocket covers a portion of the tab located along a line that extends through the aperture, the line being substantially horizontal when the package is hung from the hook.*

49.     Federal Mogul has marked ANCO wipers with U.S. Patent 6,168,020, with knowledge that the claims of this patent do not cover one or more of the products on which this patent is marked, *e.g.*, the ANCO Contour wiper packaging.

**U.S. Patent 5,807,016**

50.     U.S. Patent 5,807,016 is a utility patent titled "Connection Of Windshield Wiper Blades," which issued September 15, 1998.



51.    U.S. Patent 5,807,016 contains three independent claim, claims 1 and 41, both directed to a "windshield wiper blade system," and claim 45 directed to a "method of attaching a windshield wiper blade assembly." Independent claims 1 and 41 recite a "wiper arm" as part of the "system."

52.    Federal Mogul has marked ANCO wiper blade assemblies with U.S. Patent 5,807,016, with knowledge that the claims of this patent do not cover one or more of the products on which this patent is marked, *e.g.*, the ANCO wipers are not "systems," as they do not incorporate the "wiper arm."

**U.S. Patent D372,012**

53.    U.S. Patent D372,012 is a design patent titled "Windshield Wiper Unit," which issued July 23, 1996.

54.    U.S. Patent D372,012 contains a single claim directed to the "ornamental design for a windshield wiper unit," *i.e.*, essentially the construction of a particular embodiment of a wiper blade.

55.    Federal Mogul has marked ANCO wipers with U.S. Patent D372,012, with knowledge that this claim does not cover the products on which this patent is marked.



**U.S. Patent D404,354**

56.    U.S. Patent D404,354 is a design patent titled "Windshield Wiper Blade Connector," which issued January 19, 1999.

57.    U.S. Patent D404,354 contains a single claim directed to the "ornamental design for a windshield wiper blade connector," *i.e.*, essentially an adapter piece for facilitating the connection of a "J"-shaped connector hook on the wiper arm.

58.    Federal Mogul has marked ANCO wipers with U.S. Patent D404,354, with knowledge that this claim does not cover the products on which this patent is marked.

**U.S. Patent 5,885,023**

59.    U.S. Patent 5,885,023 is a utility patent titled "Connection Of Windshield Wiper Blades," which issued September 15, 1998.

60.    U.S. Patent 5,885,023 contains four independent claim, claims 1, 17, 26 and 28, all directed to a "windshield wiper blade connector."

61.    Claim 1 is representative:

1. *A windshield wiper blade connector for use in connecting a windshield wiper blade to pin-type and hookslot wiper arms, the connector comprising:*

*structure for use in attaching the connector to a windshield wiper blade;*

*a side wall defining a hole sized to receive a pin of a pin-type wiper arm;*

*a movable beam positioned relative to the hole in the side wall so that the beam engages the pin of the pin-type wiper arm when the pin is received in the hole to secure the connector to the pin-type wiper arm;*

-16-



*a tab extending from the movable beam and positioned so that the tab engages a slot of a hookslot wiper arm when the hookslot wiper arm is attached to the connector to secure the connector to the hookslot wiper arm;*

*wherein the tab is located on a first side of the movable beam and the movable beam is positioned so that a second side of the movable beam engages the pin of the pin-type wiper arm when the connector is attached to the pin-type wiper arm and the structure for use in attaching the connector to a windshield wiper blade assembly includes a snap-fit latch.*

62.    Federal Mogul has marked ANCO wipers with U.S. Patent 5,885,023, with knowledge that the claims of this patent do not cover one or more of the products on which this patent is marked.

### Summary On Intent

63.    Federal Mogul is a patent-sophisticated company.

64.    Federal Mogul knew, or should have known, that many of the patents marked on its ANCO wiper blade products do not cover the products on which they are marked.

### G.    Federal Mogul's Liability And Public Harm

65.    Federal Mogul's false marking of its products, coupled with its intended purpose in deceiving the public, is injurious to the public.

66.    Federal Mogul is liable to the United States and Josephs for false marking under 35 U.S.C. §292 (b).

67.    The public interest requires Federal Mogul be enjoined from further acts of false marking.



## IV. **DEMAND FOR RELIEF**

WHEREFORE, plaintiff Josephs demands entry of judgment against defendant Federal Mogul granting relief as follows:

A.     A determination that Federal Mogul has violated 35 U.S.C. §292 by falsely marking its unpatented articles as "patented" for the purpose of deceiving the public;

B.     An order fining Federal Mogul for false marking of its products in an amount which is reasonable in light of the total revenue and gross profit derived  from the sale of falsely marked goods and the degree of intent to falsely mark which is proven, with half of the fine going to the use of the United States and the other half going to Josephs;

C.     A determination that this case is "exceptional," in the sense of 35 U.S.C. § 285;

D.     An order preliminarily and permanently enjoining Federal Mogul, its officers, agents, servants, employees, contractors,  suppliers and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from committing new acts of false patent marking and to cease all existing acts of false patent marking within 90 days;

E.     An award in favor of Josephs, and against Federal Mogul, for the costs incurred by Josephs in bringing and maintaining this action, including reasonable attorneys' fees; and



F.      Such other, further, and different relief as may be just and equitable on the

proofs.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**


By:   /s/ Robert C.J. Tuttle
MARK A. CANTOR          (P32661)
ROBERT C.J. TUTTLE        (P25222)
JOHN E. NEMAZI           (P33285)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
Tel:     (248) 358-4400
Fax:     (248) 358-3351
Email: mcantor@brookskushman.com
         rtuttle@brookskushman.com
         jnemazi@brookskushman.com
         *Attorneys for Plaintiff*

Dated: February 12, 2010

